RECORD NO. 15-1420

In The

# United States Court of Appeals

For The Fourth Circuit

## JOSEPH JEMSEK, M.D.,

*Plaintiff – Appellant*,

v.

## STATE OF NORTH CAROLINA; NORTH CAROLINA MEDICAL BOARD; JANELLE R. RHYNE, M.D.; ROBERT MOFFATT, M.D.; H. ARTHUR MCCULLOCH, M.D.; ALOISIUS P. WALSH; E. K. FRETWEEL, M.D.; MICHAEL E. NORINS, M.D.; GEORGE L. SAUNDERS, M.D.; SARVARESH SATHIRAJU, M.D.; DICKY S. WALIA; RALPH LOOMIS, M.D.; DON JABLONSKI, M.D.; PAUL S. CAMNITZ, MD, M.D.; CHERYL WALKER-MCGILL, M.D.; PASCAL UDEKWU, M.D.; HELEN DIANE MEELHEIM, FNP-BC; SUBHASH GUMBER, M.D., Ph.D.; TIMOTHY E. LIETZ, M.D.; DEBRE A. BOLICK, M.D.; ELANOR E. GREENE, M.D.; A. WAYNE HOLLOMAN; THELMA C. LENNON; MICHAEL J. ARNOLD, M.B.A.; BARBARA E. WALKER, D.O.,

*Defendants – Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

―――――――――

## BRIEF OF APPELLANT

―――――――――

Jacques G. Simon
JACQUES G. SIMON ATTORNEY AT LAW
2174 Hewlett Avenue, Suite 201
Merrick, New York 11566
(516) 378-8400

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. **15-1420**        Caption: Jemsek v. State of North Carolina et.al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

JOSEPH JEMSEK M.D.
(name of party/amicus)


who is _____ THE APPELLANT _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.    Does party/amicus have any parent corporations? ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____04/27/15_____

Counsel for: APPELLANT _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____04/27/15_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Stephen D. Feldman
Ellis & Winters, LLP
P.O. Box 33550
Raleigh, NC 27636

Andrew H. Erteschik
Poyner Spruill LLP
P. O. Box 1801
301 Fayetteville St., Suite 1900
Raleigh, NC 27602-1801

Ronald Hill Grabber, Esq.
Nathaniel Gavin Zaleski
Boxley, Bolton, Garber & Haywood, LLP
P. O. Box 1429
227 West Martin St.
Raleigh, NC 27602

_____
(signature)

_____04/27/15_____
(date)

- 2 -

ii

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS....................................................................... iii

TABLE OF AUTHORITIES ...............................................................vi

I.    JURISDICTIONAL STATEMENT ...............................................1

    (A)    The basis for the District Court's subject matter jurisdiction ..............1

    (B)    The basis for the Court of Appeals jurisdiction ...................................1

    (C)    The filing dates establishing the timeliness of the appeal were met ........................................................................................2

    (D)    Statement regarding the finality of the District Court's Order ............2

II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................2

III.    CONCISE STATEMENT OF THE CASE ....................................................3

    (A)    Factual Background.......................................................................3

    (B)    Procedural background relevant to the appeal ....................................7

        (i)    The motions to dismiss .............................................................7

        (ii)    Appellant's opposition to motion to dismiss .............................8

        (iii)    The replies.............................................................................9

        (iv)    The substance of the Order and Judgment of the District Court...........................................................................................9

IV.    SUMMARY OF THE ARGUMENT .........................................................11

iii

V.    ARGUMENT................................................................13

POINT I    THE DISTRICT COURT'S ORDER CONSTITUTES
REVERSIBLE ERROR TO THE EXTENT THAT IT IS
PREDICATED UPON THE APPLICATION OF
ELEVENTH AMENDMENT IMMUNITY TO THE
BOARD RESPONDENTS ................................................13

(A)    The Standard of Appellate review of a District
Court's dismissal pursuant to FRCVP 12(b)(1) is
de novo review................................................................14

(B)    The standard of appellate review on a District
Court's dismissal pursuant to FRCVP 12(b)(6) is
de novo review................................................................16

(C)    The District Court's dismissal of the complaint
against all Board Respondents pursuant to FRCVP
12(b)(1) and 12(b)(6) which is predicated upon the
application of Eleventh Amendment immunity
constitutes reversible error.............................................18

(1)    Summary of the holdings of the District
Court regarding Eleventh Amendment
immunity .......................................................18

(2)    General law applicable to the injunctive and
declaratory relief sought by the Appellant in
the complaint ................................................19

(3)    The authorities cited by the District Court in
support of its Order dismissing the
complaint do not support the application of
the Eleventh Amendment immunity to the
Board Respondents.......................................22

POINT II    THE DISTRICT COURT'S ORDER GRANTING
DISMISSAL AGAINST THE BOARD RESPONDENTS
IS CONTRARY TO RELEVANT JURISPRUDENCE
AND CONSTITUTES REVERSIBLE ERROR........................ 34

(A)   Eleventh Amendment immunity does not apply to bar the assertion of subject matter jurisdiction against any of the Board Respondents............................34

POINT III   THE DISTRICT COURT'S GRANT OF THE MOTION TO DISMISS BASED UPON ARTICLE III STANDING AMOUNTS TO REVERSIBLE ERROR................................38

(A)   General applicable principles regarding Article III standing........................................................................39

(B)   The Appellant has alleged the existence of an injury in fact..................................................................40

(C)   The Appellant alleged that the continuous injury caused to his due process rights by the continuous existence of the constitutionally flawed 2006 Order and 2008 letter is traceable to the Board Respondents....................................................................41

(D)   The redressability prong of the Article III standing has also been satisfied ........................................ 42

POINT IV   THE DECISION OF THE DISTRICT COURT IS AGAINST THE INTEREST OF THE PUBLIC OF THE STATE OF NORTH CAROLINA ...........................................46

VI.   CONCLUSION.................................................................48

VII.   STATEMENT PURSUANT TO FRAP 34 AND LOCAL RULE 34(a) REGARDING ORAL ARGUMENT ........................................................49

ADDENDUM

ATTORNEYS' CERTIFICATE OF COMPLIANCE
PURSUANT TO FRAP 34(a)(7)(C)

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Bain,*
    697 F.2d 1213 (4th Cir. 1982) ................................................................14, 15

*Aetna Life Ins. v. Lavoie,*
    475 U.S. 813, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986) .....................*passim*

*Allen v. College of William & Mary,*
    245 F. Supp. 2d 777 (E.D. Va. 2003) ........................................................36

*Allen v. Wright,*
    468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) .................39, 41, 42

*Amtrak v. McDonald,*
    978 F. Supp. 2d 215 (S.D.N.Y. 2013) ........................................................27

*Blackwelder Furniture Co.,*
    550 F.2d 189 (4th Cir. 1977) ....................................................................46

*Bracy v. Gramley,*
    520 U.S. 899, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) .......................30, 31

*Bragg v. W. Va. Coal Ass'n,*
    248 F.3d 275 (4th Cir. 2001) ....................................................................36

*Braswell v. Haywood Reg'l Med. Ctr.,*
    352 F. Supp. 2d 639 (W.D.N.C. 2005)......................................20, 21, 24, 48

*Caesars Massachusetts Dev. Co., LLC v. Crossby,*
    2014 WL 2468689 (D. Mass. May 30, 2014).......................................*passim*

*Canty v. City of Richmond, Va. Police Dep't,*
    383 F. Supp. 1396 (E.D. Va. 1974), *aff'd mem. sub nom.,*
    *Canty v. Brown,* 526 F.2d 587 (4th Cir. 1975), *cert. denied,*
    423 U.S. 1062, 96 S. Ct. 802, 46 L. Ed. 2d 654 (1976) ......................... 16-17

*Caperton v. A.T. Massey Coal Co.*,
    556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) ........................31

*Carboni v. Meldrum*,
    949 F. Supp. 427 (W.D. Va. 1996), *aff'd*,
    103 F.3d 116 (4th Cir. 1996) ........................................................................36

*Clay v. Thompson*,
    2014 U.S. Dist. LEXIS 96648 (M.D. Ala. June 26, 2014)...........................45

*Constantine v. Rectors & Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005) ........................................................................19

*DeBauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) ....................................................18, 24, 25, 36

*Edelman v. Jordan*,
    415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ...............................35

*Elrod v. Burns*,
    427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) .........................32, 40

*Evans v. B.F. Perkins Co.*,
    166 F.3d 642 (4th Cir. 1999) ........................................................................15

*Ex parte Young*,
    209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) ..............................*passim*

*Faulkner v. Jones*,
    10 F.3d 226 (4th Cir. 1993) ....................................................................32, 40

*Feit v. Ward*,
    886 F.2d 848 (7th Cir. 1989) ........................................................................44

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) ........................................................39, 40, 41, 42

*Friendship Villa-Clinton, Inc. v. Buck*,
    512 F. Supp. 720 (D. Md. 1981)...................................................................36

vii

*Gibson v. Berryhill*,
    411 U.S. 564, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973) ...............................20

*Giovani Carandola, Ltd. v. Bason*,
    303 F.3d 507 (4th Cir. 2002) ...............................................................46, 48

*Goldberg v. Kelly*,
    397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) ..............................30

*Gray v. Laws*,
    51 F.3d 426 (4th Cir. 1995) ..........................................................................35

*Green v. Mansour*,
    474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) ...........................34, 36

*Grimes v. Nottoway Cnty. Sch. Bd.*,
    462 F.2d 650 (4th Cir. 1972) .......................................................................30

*Harrison v. United States Postal Service*,
    840 F.2d 1149 (4th Cir. 1988) .....................................................................16

*Hathcock v. Navistar Int'l Transp. Corp.*,
    53 F.3d 36 (4th Cir. 1995) ...................................................................*passim*

*Higgins v. United States*,
    894 F. Supp. 232 (M.D.N.C. 1995), *aff'd per curiam*,
    1996 U.S. App. LEXIS 6637, No. 95-2741,
    1996 WL 160782 (4th Cir. Apr. 8, 1996)....................................................14

*Howell v. Marion Sch. Dist. One*,
    2009 U.S. Dist. LEXIS 22723 (D.S.C. Mar. 19, 2009)........................*passim*

*Hughes Network Systems, Inc. v. Interdigital Communications Corp.*,
    17 F.3d 691 (4th Cir. 1994) ..........................................................................46

*Hurles v. Ryan*,
    650 F.3d 1301 (9th Cir. 2011) ......................................................................30

*In re PEC Solutions, Inc. Sec. Litig.*,
    418 F.3d 379 (4th Cir. 2005) ........................................................................16

*Jordan v. Alternative Res. Corp.*,
    458 F.3d 332 (4th Cir. 2006) ........................................................17

*Legend Night Club v. Miller*,
    637 F.3d 291 (4th Cir. 2011) ......................................................46

*Luckey v. Harris*,
    860 F.2d 1012 (11th Cir. 1988), *reh. denied*,
    896 F.2d 479 (11th Cir. 1989), *cert. denied*,
    495 U.S. 957, 110 S. Ct. 2562, 109 L. Ed. 2d 744 (1990) ...........................37

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) .....................40, 42

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) ......................................................15

*Metcalf & Eddy Inc. v. Puerto Rico Aqueduct & Sewer Auth.*,
    945 F.2d 10 (1st Cir. 1991), *rev'd on other grounds*,
    506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) ............18, 25, 26, 27

*Milliken v. Bradley*,
    433 U.S. 267, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1997) ...............................35

*Mylan Labs., Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ........................................................17

*N.C. Motorcoach Ass'n v. Guilford Cnty. Bd. of Educ.*,
    315 F. Supp. 2d 784 (M.D.N.C. 2004) ........................................14

*Nat'l R.R. Passenger Corp. v. McDonald*,
    978 F. Supp. 2d 215 (S.D.N.Y. 2013) .....................................18, 27

*Nelson v. Strawn*,
    897 F. Supp. 252 (D.S.C. 1995) ..................................................35

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*,
    305 F.3d 566 (6th Cir. 2002) ..................................................32, 41

*Papasan v. Allain*,
478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) .......................34, 35

*Patterson v. Ramsey*,
413 F. Supp. 523 (D. Md. 1976)..................................................................30

*Pitt Cnty. v. Hotels.com, L.P.*,
553 F.3d 308 (4th Cir. 2009) ......................................................................15

*Republic of Paraguay v. Allen*,
134 F.3d 622 (4th Cir. 1998) ......................................................19, 22, 23, 35

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) ......................................................................15

*Ross v. Meese*,
818 F.2d 1132 (4th Cir. 1987) ........................................................32, 40, 41

*Satterfield v. Edenton-Chowan Bd. of Edu.*,
530 F.2d 567 (4th Cir. 1975) ......................................................................30

*Sierra Club v. Kempthorne*,
589 F. Supp. 2d 720 (W.D. Va. 2008).........................................................14

*Simpson v. Macon Cnty.*,
132 F. Supp. 2d 407 (W.D.N.C. 2001).........................................................20

*Sligh v. Doe*,
596 F.2d 1169 (4th Cir. 1979) ....................................................................16

*Sniadach v. Family Finance Corp.*,
395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969) ...............................30

*Stanley v. Darlington Cnty. Sch. Dist.*,
879 F. Supp. 1341 (D.S.C. 1995) ...............................................................37

*State v. Atwood*,
27 N.C. App. 445 (N.C. Ct. App. 1975).......................................................30

*Stivers v. Pierce*,
　　71 F.3d 732 (9th Cir. 1995) ........................................................20

*T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*,
　　385 F.3d 836 (4th Cir. 2004) .....................................................17

*Taylor v. Kellogg Brown & Root Servs.*,
　　658 F.3d 402 (4th Cir. 2011) .....................................................15

*Teachers' Ret. Sys. v. Hunter*,
　　477 F.3d 162 (4th Cir. 2007) .....................................................17

*Thigpen v. United States*,
　　800 F.2d 393 (4th Cir. 1986) .....................................................15

*United States ex rel. Vuyyuru v. Jadhav*,
　　555 F.3d 337 (4th Cir. 2009) .....................................................16

*United States v. Charleston Cnty.*,
　　318 F. Supp. 2d 302 (D.S.C. 2002) ........................................32, 40

*Valley Forge Christian College v.*
*Americans United for Separation of Church and State, Inc.*,
　　454 U.S. 464, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) ...............39

*Vance v. Chester Cnty. Bd. of Sch. Trustees*,
　　504 F.2d 820 (4th Cir. 1974) .....................................................30

*Velasco v. The Gov't of Indonesia*,
　　370 F.3d 392 (4th Cir. 2004) .....................................................16

*Vollette v. Watson*,
　　937 F. Supp. 2d 706 (E.D. Va. 2013) ........................................35

*Withrow v. Larkin*,
　　421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) .................31

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V ...................................................................28, 29

U.S. CONST. amend. XI ................................................................*passim*

U.S. CONST. amend. XIV ..............................................................*passim*

## STATUTES

28 U.S.C. § 1332 ................................................................................1

28 U.S.C. § 2201 *et seq.* ...........................................................3, 5, 6

42 U.S.C. § 1983 ...........................................................................*passim*

N.C. Gen. Stat. §§ 138A-1–138A-45 ................................................31

## RULES

4th Cir. R. 28 ....................................................................................28

4th Cir. R. 31 ....................................................................................28

4th Cir. R. 34(a) ...............................................................................49

Fed. R. App. P. 3 ............................................................................1, 2

Fed. R. App. P. 4 ............................................................................1, 2

Fed. R. Civ. P. 12(b)(1) ..............................................................*passim*

Fed. R. Civ. P. 12(b)(2) ....................................................7, 10, 13

Fed. R. Civ. P. 12(b)(6) ..............................................................*passim*

Fed. R. Civ. P. 34 .............................................................................49

# I.    JURISDICTIONAL STATEMENT

## (A)    The basis for the District Court's subject matter jurisdiction.

The District Court had original federal question subject matter jurisdiction over the issues stated in the complaint pursuant to 28 U.S.C. Sec. 1332. The issues which are the subject matter of the underlying litigation arise under the due process clause of the Fourteenth Amendment of the US Constitution. *See* complaint at paragraph 40, Appendix p. 30. (references to appendix shall be made hereinafter as A. p. __). The factual basis for the invocation of the Court's subject matter jurisdiction revolves around Appellant's contention of present and future constitutional due process violations perpetrated by the respondents upon him through the initiation and the continuous and active publication, maintenance of record and enforcement a constitutionally flawed Order of Discipline dated August 21, 2006 and of a constitutionally flawed formal disciplinary letter of concern dated June 23, 2008. A. pp. 31-54.

## (B)    The basis for the Court of Appeals jurisdiction.

The Court of Appeals has original appellate jurisdiction pursuant to FRAP 3 and 4. This appeal is taken as a matter of right from that part of the final Order of the US District Court for the Eastern District of North Carolina (Boyle, J) A. p. 570-579 which granted the motions to summarily dismiss the complaint of the past and present members of the North Carolina Medical Board ("Board Respondents")

pursuant to FRCVP 12 (b)(1) and pursuant to FRCVP 12(b)(6). The Appellant is also appealing from the final judgment of dismissal entered pursuant to the District Court's Order A. pp. 580-518. Both the Order and the Judgment are final dispositions as they summarily dismissed the complaint in its entirety.

**(C)**     **The filing dates establishing the timeliness of the appeal were met.**

The time allowed for filing of the Notice of Appeal in the District Court is 30 days from the date of entry of the final Order of the District Court. *See* FRAP 3 and 4. The Date of entry of the Order and Judgment appealed from is 03/23/2015. A. pp. 570-581. The Date of the Notice of Appeal filed is 04/16/2015. A. pp. 582-597.

**(D)**     **Statement regarding the finality of the District Court's Order.**

The District Court's Order and Judgment of dismissal are final actions of the motion court which summarily disposed of all of the issues raised in the complaint pursuant to FRCVP 12(b)(1) and 12(b)(6).

## II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court's dismissal of the complaint under FRCVP 12(b)(1) and FRCVP 12(b)(6) based upon the Court's application of the Eleventh Amendment immunity for the purposes of shielding to the Board Respondents against the underlying action which seeks to redress present and future constitutional violations constitutes reversible error.

2.    Whether the District Court's grant of the motion to dismiss under FRCVP 12(b)(1) and FRCVP 12(b)(6) predicated upon Eleventh Amendment immunity as applied by the Court to the Board Respondents is contrary to existing federal jurisprudence and constitutes reversible error.

3.    Whether the District Court's grant of the motion to dismiss pursuant to FRCVP 12(b)(1) and FRCVP 12(b)(6) based upon the Court's conclusion that the Appellant had no Article III standing to sue the past Board Respondents constitutes reversible error.

4.    Whether the District Court's grant of the motion to dismiss pursuant to FRCVP 12(b)(1) and FRCVP 12(b)(6) and its refusal to hear Appellant's constitutional claim for injunctive relief pursuant to 42 U.S.C. Sec. 1983 against the Board Respondents is against public interest.

## III.    CONCISE STATEMENT OF THE CASE

### (A)    Factual Background.

In a complaint seeking a federal civil rights injunction under 42 U.S.C. Sec. 1983 and further seeking a declaratory judgment pursuant to 28 U.S.C. Sec 2201 *et seq.*, the Appellant sought relief from the present and continued violation of his constitutionally protected due process rights perpetrated upon him  by the individual Board Respondents.

Specifically the Appellant sought the removal or record, through a mandatory civil rights injunction pursuant to 42 U.S.C. Sec. 1983, of an unconstitutionally flawed disciplinary Order issued and the past members of the Board on August 21 2006 (hereinafter "2006 Order") as well as of a letter of concern dated June 23, 2008 ("2008 letter") authored by the main offending respondent Janelle Rhyne M.D. Both documents are, continue to be and will be in the of record, remain in full force and effect and are and will be enforced in the future by the present members of the North Carolina Medical Board. The documents constitute unconstitutional due process violations of Appellant's constitutionally protected due process rights as explained below.  Complaint A. pp. 20-58.

The Appellant states that because the fraud, unconstitutional bias and undue influence was concealed by the Board Respondents and in particular by respondent Rhyne until disclosed by her in an affidavit dated June 9, 2014 (A. pp. 28-48, A. p. 474 and A. pp. 505-529), and because Rhyne infused the entire adjudicative administrative process with bias, fraud and undue influence while involving other members of the Board in her scheme, the 2006 Order and the 2008 letter of concern evaded constitutional scrutiny. The underlying action was commenced shortly after the Appellant became aware of the constitutional flaws of the ongoing 2006 Order and 2008 letter of concern on June, 2014. A. pp. 38-48.

The Appellant sought injunctive relief pursuant to 42 U.S.C. Sec. 1983 directing the current members of the Board to vacate of record the 2006 Order of discipline and the 2008 letter of concern and further enjoining them from enforcing, publishing or maintaining the same documents as an official part of Appellant's disciplinary record. The Appellant asserted that both documents constitute present and future ongoing unconstitutional and official state official action which is the byproduct of unconstitutional and biased proceedings as set forth in the complaint. A. pp. 28-58 and in particular A. pp. 56-58.

The Appellant also requested the declaration of his rights pursuant to 28 U.S.C. Sec. 2201 *et seq.*, to have removed of record and declared as unconstitutional and null and void  the existing and ongoing disciplinary 2006 Order and the 2008 letter of concern because the same amount to a continued violation of Appellant's due process rights. As a whole the Appellant explained in the complaint that the 2006 Order, restricts his medical license by restricting the type of medical care which he can impart to Lyme disease patients in North Carolina while favoring a less expensive medical approach which buttresses the financial bottom line and furthers the financial interests of Respondents Rhyne's protégé and Respondent Rhyne's own financial employer, Blue Cross Blue Shield of North Carolina ("BCBSNC"). A. pp. 31-48.

In its totality Complaint at as well as Appellant's affidavit in opposition to dismiss A. pp. 505-529 explain quite clearly that while the 2006 Order and the 2008 letter of concern were reached through the unconstitutional conduct of the past Board members who participated and were influenced by Rhyne's bias and unethical conduct in promoting the financial well-being of BCBSNC at the expense of Appellant's livelihood and medical license. The Appellant however is seeking the injunction and declaratory relief against the present and future continued enforcement and publication of the unconstitutional 2006 Order and 2008 letter of concern. A. pp. 28-58.

Although the Appellant sought to remedy the continuous present and future enforcement and publication of the unconstitutional 2006 Order and 2008 letter of concern through the injunctive and declaratory relief sought pursuant to 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 2201 *et seq.* A. pp. 28-58, the District Court simply rejected this notion. Rather the Court below stated that the complaint sought remedies with respect to past constitutional violations because the bias, fraud and undue influence occurred at the time when the documents were issued and not presently. The District Court then concluded that the continuous effect of the enforceable unconstitutional action of the state officials has no relevancy and is of no moment to Appellant's bid to have the same documents removed of record as they exist today and will exist in perpetuity in the future, so long as the alleged bias

infused during the adjudicative process which originated the issuance of the two documents, took place in the past and was not discovered until 2014. A. pp. 570-579.

The complaint and the affidavit in opposition to Board Respondents' motion to dismiss clearly state that the Appellant did not become aware of the constitutional flaws of the Order until June 3, 2014, when the Respondent Rhyne identified these issues in an affidavit interposed in relation to another action. A. pp. 36-37 and A. pp. 505-524. Shortly thereafter the underlying action was commenced on September 9, 2014. A. p. 6. This set of facts was of no moment to the District Court's dismissal rationale. A. pp. 570-579.

## (B)    Procedural background relevant to the appeal.

### (i)    The motions to dismiss.

The past and present Board Respondents and the Board itself moved to dismiss the complaint pursuant to FRCVP 12(b)(1), 12(b)(2) and 12(b)(6) and an accompanying memorandum of law based upon the following grounds: (1) Eleventh Amendment absolute immunity of the past and present Board Respondents and the Board; (2) *Younger* Abstention doctrine based on existing state litigation and (3) lack of Article III standing. A. pp. 217-453.

The respondent Dicky Walia, a past member of the Board also interposed a motion to dismiss. In the motion the said respondent joined the other Board

respondents in their motion to dismiss and interposed as an affirmative ground for dismissal that Mr. Walia was not a necessary party defendant to the action. The motion did not state any other independent grounds for dismissal.  A. pp. 454-462.

The State of North Carolina moved to dismiss the complaint based upon Eleventh Amendment immunity. A. pp. 463-472.

### (ii)    Appellant's opposition to motion to dismiss.

The Appellant interposed the following documents in response to the motion to dismiss:

(1)    Memorandum of law in opposition to past and present Board Respondents' motion to dismiss and Affidavit in opposition to motion to dismiss. A. pp. 473-529;

(2)    Supplemental memorandum of law regarding the inapplicability of the claim for *Younger Abstention* and the absence of state court proceedings before the final decision. A. pp. 547-553;

(3)    Memorandum of law in opposition to defendant Dicky Walia's motion to dismiss. A. pp. 530-541 and

(4)    Memorandum in Response to the Motion to Dismiss by the State of North Carolina and consent request for voluntary dismissal. A. pp. 542-546.

### (iii)    The replies.

The Board and the Board respondents interposed a reply memorandum. A. pp. 554-564. The Respondent Dicky Walia interposed a reply memorandum A. pp. 565-569.

### (iv)    The substance of the Order and Judgment of the District Court.

The District Court, (Boyle, J) issued an Order dated March 20, 2015 which was  entered in the office of the clerk on 03/23/15. A. pp. 570-579. The Order granted the Board Respondents' motions to dismiss in their totality based upon the following grounds:

(1)    Applicability of Eleventh Amendment immunity and consent dismissal as against the State of North Carolina. A. p. 574. This issue is not addressed in this appeal and it is not challenged;

(2)    Applicability of Eleventh Amendment immunity against the North Carolina Medical Board. A. pp. 575-576. This issue is not addressed in this appeal and it is not challenged;

(3)    Applicability of Eleventh Amendment immunity and the lack of applicability of the exception of *Ex Parte Young* against the Board Respondents due to what the court termed as retrospective violations of constitutional rights alleged in the complaint. The District Court specifically rejected the notion that the continuous and future effect of the unconstitutional  2006 Order and 2008 letter of

concern amount to a present and future violation of constitutional rights  A. pp. 576-578. This holding is being challenged on this appeal as reversible error.

(4)    The application of the Article III lack of standing against past members of the Board with respect to both injunctive and declaratory relief based upon the grounds that such relief has no effect upon the past Board members in their official capacities. A. pp. 578-579.  This holding is being challenged on this appeal as reversible error.

While the District Court recited the standard for dismissal for lack of personal jurisdiction, A. p. 575, dismissal for lack of personal jurisdiction pursuant to FRCVP 12(b)(2) was not a matter which the Court ruled upon. Nor was the issue of personal jurisdiction addressed as one of the substantive premises for the dismissal in the District Court's Order.

Based upon the foregoing Order, a Judgment of dismissal was entered. A. pp. 580-582.

This appeal is taken from that part of the District Court's final order which dismissed the complaint against the individual Board Respondents pursuant to FRCVP 12(b)(1) and 12(b)(6). The District Court did not address Board Respondents' argument regarding the *Younger* Abstention doctrine and that issue is not before this Court on appeal. The dismissal of the complaint by the District Court is not predicated upon the *Younger* Abstention as no state court actions were

pending at the time when the District Court Order. See Appellant's Supplemental Memorandum. A. pp. 547-553.

## IV.    SUMMARY OF THE ARGUMENT

At the core of the predicate basis for District Court's dismissal of the complaint against the Board Respondents is the District Court's central misapprehension that neither the complaint nor the affidavit in opposition to the motion to dismiss state present or future violations of Appellant's constitutionally protected due process rights.

Rather, the District Court erroneously contends that the constitutionally flawed 2006 Order of the Board which restricts Appellant's medical license and the 2008 disciplinary letter of concern, are at best alleged to be bi products of past constitutional violations which the Appellant has no right to have redressed by the Courts. This position is articulated by the District Court notwithstanding the fact that unconstitutional 2006 Order and the 2008 letter of concern continue and will continue to be enforced by the present Board Respondents and remain in full force and effect today and in the future. Order A. pp. 576-578.

Based upon the foregoing erroneous premises, the District Court dismissed the complaint as against all Board Respondents by virtue of its erroneous application of Eleventh Amendment immunity and its refusal to apply the exceptions of *Ex Parte Young.* A. pp. 576-579.

11

The Appellant argues to this Honorable Appellate Court that the District Court erred in dismissing the underlying complaint as against the Board Respondents because the pleading and the affidavit in opposition to the motions to dismiss clearly identify present and future violations of Appellant's constitutionally protected due process rights. The Appellant further argues that the District Court's straight application of the Eleventh Amendment immunity to all of the Board Respondents and its refusal to recognize the exceptions of *Ex Parte Young* and related case law is reversible error.

The District Court also applied the paradigm of Article III lack of standing as against the past Board Respondents. It stated that neither injunctive nor declaratory relief would have any effect upon past Board members. A. pp. 578-579.

As discussed below the District Court erred as a matter of law on all its reasoning because the Appellant has shown that all of the elements pertaining to Article III standing were satisfied. A. pp. 493-499. By contrast the District Court's Order did not perform the necessary legal analysis pertaining to all of the elements of Article III standing and it cited no authority for its conclusions of dismissal based upon lack of standing. A. pp. 570-579. In short, the Appellant argues to this Appeals Court that the District Court erred as a matter of law in dismissing the claims for declaratory judgment against the past Board Respondents based on lack of Article III standing.

The Appellant further argues in this appeal that while the District Court correctly recited the legal standards applicable to motions to dismiss under FRCVP 12(b)(1), 12(b)(2) and 12(b)(6), it failed to apply the same to the allegations of the complaint and the affidavit in opposition the motions to dismiss of the past and present Board members.

Finally the Appellant argues that the District Court's Order allowing a constitutionally flawed official action of the North Carolina state officials to stand in the form of the 2006 Order and the 2008 letter of concern is against applicable federal jurisprudence and against the interest of the public.

## V.    ARGUMENT

### POINT I

**THE DISTRICT COURT'S ORDER CONSTITUTES REVERSIBLE ERROR TO THE EXTENT THAT IT IS PREDICATED UPON THE APPLICATION OF ELEVENTH AMENDMENT IMMUNITY TO THE BOARD RESPONDENTS.**

The District Court's Order dismissing the complaint pursuant to FRCVP 12(b)(1) and 12(b)(6) constitutes reversible order because: (1) it erroneously applies Eleventh Amendment immunity to past and present Board Members; (2) the authorities cited by the District Court in support of its dismissal are inapplicable or irrelevant to the issues in the present case and contrary to applicable jurisprudence.

13

## (A)   The Standard of Appellate review of a District Court's dismissal pursuant to FRCVP 12(b)(1) is de novo review.

There are two ways in which to present a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. The defendant may contend either that the complaint fails to allege facts upon which subject matter jurisdiction can be based, or that the jurisdictional facts alleged in the complaint are untrue. *N.C. Motorcoach Ass'n v. Guilford County Bd. of Educ.*, 315 F. Supp. 2d 784, 790 (M.D.N.C. 2004) citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Where the Respondents raise the argument that the allegations in the Complaint fail, as a matter of law to support subject matter jurisdiction, Appellants enjoy procedural safeguards similar to those they would enjoy when opposing a Rule 12(b)(6) motion. *Id.* As such, the Court will accept Appellants' allegations as true, construing them most favorably to Appellants, and will rely solely on the pleadings, disregarding affidavits or other materials, to determine whether Appellants' Complaint contains sufficient allegations to support subject matter jurisdiction. *Id.* citing *Higgins v. United States*, 894 F. Supp. 232, 234 (M.D.N.C. 1995), *aff'd per curiam*, 1996 U.S. App. LEXIS 6637, No. 95-2741, 1996 WL 160782 (4th Cir. Apr. 8, 1996). *Also see Sierra Club v. Kempthorne*, 589 F. Supp. 2d 720, 725 (W.D. Va. 2008) citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

14

If the 12(b)(1) motion is a factual challenge, refuting the alleged jurisdictional basis of a complaint by asserting that, although facially adequate, the allegations are factually untrue, the court may then consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986) (citing *Adams*, 697 F.2d at 1219).

Here the Board Respondents alleged that the facts as stated in the complaint set forth grievances for past constitutional violations which cannot be redressed through the relief sought thereby depriving the Court of subject matter jurisdiction to adjudicate these clams due to the inapplicability of the Ex parte Young exceptions to the Eleventh Amendment immunity. The Respondents also contend that allegations of past constitutional violations fail to state a claim upon which relief may be granted. A. pp. 221-238. The District Court agreed with these underlying assertions, A. pp. 570-579, and granted the motion to dismiss.

A district court's dismissal of a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is subject to *de novo* review. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. Va. 1999) citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768-769 (4th Cir. 1991); *Taylor v. Kellogg Brown & Root Servs.*, 658 F.3d 402, 408 (4th Cir. Va. 2011) citing *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009).

The US Court of Appeals for the Fourth Circuit reviews a district court's jurisdictional findings of fact on any issues that are not intertwined with the facts central to the merits of the Appellant's claims under the clearly erroneous standard of review and any legal conclusions flowing there from *de novo*. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. Va. 2009) citing *Velasco v. The Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Sligh v. Doe*, 596 F.2d 1169, 1171 & n.9 (4th Cir. 1979).

**(B)    The standard of appellate review on a District Court's dismissal pursuant to FRCVP 12(b)(6) is de novo review.**

The Fourth Circuit Court of Appeals reviews de novo the district court's decision to dismiss under Rule 12(b)(6). *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. Va. 2009) citing *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005).

In evaluating a civil rights complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), [the Court of Appeals] must be "especially solicitous" of the wrongs alleged. [The Courts] must not dismiss the complaint "unless it appears to a certainty that the Appellant would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Harrison v. United States Postal Service*, 840 F.2d 1149, 1152 (4th Cir. Md. 1988) citing *Canty v. City of Richmond, Va. Police Dep't*, 383 F. Supp. 1396, 1399 (E.D. Va. 1974), *aff'd*

16

*mem. sub nom. Canty v. Brown*, 526 F.2d 587 (4th Cir. 1975), *cert. denied*, 423 U.S. 1062, 46 L. Ed. 2d 654, 96 S. Ct. 802 (1976).

Where the District Court's order ruled on the legal sufficiency of the complaint, the Fourth Circuit Court of Appeals reviews that order de novo. *See Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 170 (4th Cir. N.C. 2007) citing *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006).

A Rule 12(b)(6) motion to dismiss "should not be granted unless it appears certain that the Appellant can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering the motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the Appellant." *Mylan Labs.*, 7 F.3d at 1134. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. Va. 2004).

Thus in the present case, the standard of appellate review of the District Court's order dismissing the complaint pursuant to FRCVP 12(b)(6) is de novo and the jurisprudence rules applicable to complaint allegations cited above apply.

**(C)    The District Court's dismissal of the complaint against all Board Respondents pursuant to FRCVP 12(b)(1) and 12(b)(6) which is predicated upon the application of Eleventh Amendment immunity constitutes reversible error.**

### (1)    Summary of the holdings of the District Court regarding Eleventh Amendment immunity.

The crux of the District Court's analysis of the motion to dismiss regarding the applicability of Eleventh Amendment immunity is rather simplistic and erroneous. In its Order at A. pp. 576-578 the District Court inaccurately surmises that the relief sought by the Appellant in the Court below is "clearly retrospective" because "[p]laintiff's claim clearly addresses alleged wrongs that occurred entirely in the past."  Citing *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). The District Court then concluded based upon  the foregoing premises that the Eleventh Amendment immunity exception of the *Ex Parte Young* does not apply because the doctrine "does not permit judgments against state officers declaring that they violated federal law in the past…."  Citing *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy Inc.*, 506 U.S. 139, 146 (1993) and *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 231 (S.D.N.Y. 2013).

With respect to the injunctive relief sought, the District Court also erroneously surmises that under the facts of the present case  the same "relates only to the consequences of actions in the past." A. p. 577.

The District Court flatly rejected Appellant's argument that the continued enforcement and publication of the constitutionally flawed 2006 Order and 2008 letter of concern by the present members of the Board, which continues presently and will continue in the future, amounts to a continued and future violation of constitutionally protected due process rights. A. pp. 577-578 citing *Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir., 1998) and the unpublished decision of the Massachusetts District Court in *Caesars Massachusetts Dev. Co., LLC v. Crossby*, 2014 WL 2468689 at *8 (D. Mass. May 30, 2014). The District Court further erroneously concluded as follows: "Indeed because Appellant has alleged that his 2006 and 2008 investigations by the medical board were conducted unconstitutionally, "Appellant's requested relief cannot ensure future compliance with a substantive legal question". Citing *Caesars*, *supra* at *7.

The District Court then squarely applied the Eleventh Amendment to bar injunctive and declaratory judgment claims against all past and present Board members. A. pp. 577-578 citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005).

### (2)    General law applicable to the injunctive and declaratory relief sought by the Appellant in the complaint.

As a general proposition and  as a matter of law the Appellant is entitled to the relief sought in the complaint. Courts routinely vacate adjudicative Orders which are predicated and influenced by bias and unconstitutionality because such

19

orders are unconstitutional and violate due process. *See*, *e.g.*, *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36 (4th Cir. S.C. 1995) – Order vacated where the Court of Appeals found that the District Judge should have recused himself for bias; *Howell v. Marion Sch. Dist. One*, 2009 U.S. Dist. LEXIS 22723, 21 (D.S.C. Mar. 19, 2009) citing *Aetna Life*, 475 U.S. 813, 824-27, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986) – disqualification of the head judge who wrote the decision invalidated the decision of the entire panel.

In *Braswell v. Haywood Reg'l Med. Ctr.*, 352 F. Supp. 2d 639, 645-646 (W.D.N.C. 2005) the Court denied a motion to dismiss where bias was alleged. The Court held that "[t]o run afoul of due process, "personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case." Citing *Simpson v. Macon County*, 132 F. Supp. 2d 407, 411 (W.D.N.C. 2001) (internal quotations omitted).

The US Supreme Court has defined such bias in the adjudicative process as one where the decision maker has a "substantial pecuniary interest" or competitive interest in the decision before him. *Gibson v. Berryhill*, 411 U.S. 564, 579, 36 L. Ed. 2d 488, 93 S. Ct. 1689 (1973); *see also*, *Stivers v. Pierce*, 71 F.3d 732, 742 (9th Cir. 1995) ("The Supreme Court has held [due process is violated] when [a tribunal's] members have a direct and substantial competitive interest in the outcome of the proceedings before them."). That is exactly what the Appellant

20

alleges in the complaint. Rhyne's pecuniary interest in the underlying proceedings as well as her exertion of undue influence and fraud through concealment upon the process affecting the ultimate issuance of the 2006 Order and 2008 letter of concern are clearly alleged. A. pp. 33-48. The taint of the entire process by Rhyne's participation in hearings, deliberations and personal spinning off the 2008 events which culminated in the issuance of the 2008 letter issued by Rhyne herself are clearly alleged. A. pp. 33-48.

In the foregoing cases the bias of the adjudicative tribunal as well as the constitutional validity of the orders and decisions was challenged in the Appellate tribunals **after** the proceedings were completed and after the bias was alleged to have existed in the past. Yet, the Orders affected by the constitutional bias were vacated by the courts and they were not allowed to stand simply because the existing Orders were the bi product of unconstitutional bias which occurred during past proceedings. The Courts did not perceive the continuous existence of Orders affected by constitutional bias and undue influence as actions of the past. *Hathcock*, 53 F.3d 36; *Howell*, 2009 U.S. Dist. LEXIS 22723, 21 (D.S.C. Mar. 19, 2009) citing *Aetna Life*, 475 U.S. 813, 824-27, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986); *Braswell*, 352 F. Supp. 2d 639, 645-646, *supra*.

Here Rhyne is alleged to have infused bias undue influence and fraud in the very same process which was supposed to be impartial and free of the same taint as

21

a matter of constitutional right, while all of the other past and present Board Respondents were are and continue to be in the future affected by such unconstitutional bias, undue influence and fraud while enforcing the constitutionally flawed actions of the Board. A. pp. 28-58.

Consequently, the law cited above regarding the vacatur and dismissal of existing adjudicative orders fraught by unconstitutional bias, fraud and undue influence squarely applies to the 2006 Order and the 2008 letter of concern.

> **(3)** **The authorities cited by the District Court in support of its Order dismissing the complaint do not support the application of the Eleventh Amendment immunity to the Board Respondents.**

None of the authorities cited by the District Court in its Order A. pp. 575-578 support the dismissal of the complaint based upon Eleventh Amendment immunity with respect to the Board Respondents.

The District Court's misplaces it reliance upon *Republic of Paraguay*, 134 F.3d at 628 to reject Appellant's claims that the continued publication, enforcement and full force and effect given by the present and future members of the Board to the 2006 Order and 2008 letter amounts to a remediable violation of present and future constitutionally protected  due process rights. That authority is of no moment to the facts of the present case.

In *Republic of Paraguay*, *supra*, the consul general of Paraguay and the ambassador of Paraguay brought a declaratory judgment against the governor of

Virginia and Virginia authorities to assert a violation of an international treaty right to be notified of the arrest, imprisonment and conviction of one of that country's citizens for capital murder. They demanded the release of the Paraguayan citizen and the vacatur of his conviction based upon the foregoing alleged international treaty violations. This Court differentiated the treaty rights of the Plaintiffs in *Republic of Paraguay*, *supra* from the individual rights of the incarcerated individual. *Id.* at 627-629. This Court held that the continuous order of conviction applicable to the citizen of Paraguay was not synonymous with the past violations of the treaty which were no longer continuous once the Virginia authorities informed the Paraguayan diplomats of the status of their citizen. *Id.* In *Republic of Paraguay* there was no continuous unconstitutional Order or continuing state action involved such as the ones in the present case.

That is not the case here. In the present case below,  the Appellant sought the redress of the violation of his own civil rights which continue to be violated by the continuous publication, enforcement and effectiveness of the 2006 Order and the 2008 letter.

This Court of Appeals did not hold in *Republic of Paraguay*, *supra*, that a continuous and present Order or state action which are unconstitutional and remain in full force and effect after the discovery of bias, fraud and undue influence, should remain in full force and effect just because the actual biased and

23

constitutionally tainted adjudication happened in the past. To the contrary, the law in this circuit and in others is quite clear that where adjudicative Orders and official action are permeated with bias the Order and the letter of concern must be vacated. *Hathcock*, 53 F.3d 36; *Howell*, 2009 U.S. Dist. LEXIS 22723, 21 (D.S.C. Mar. 19, 2009) citing *Aetna Life*, 475 U.S. 813, 824-27 and *Braswell*, 352 F. Supp. 2d 639, 645-646 *supra*.

The District Court's' reliance upon *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999) for the proposition that the constitutionally flawed disciplinary Order of 2006 and the letter of concern of 2008 should be left standing because of alleged past constitutional violations is also misplaced.

In that case the Appellant speculated without any basis in an amended complaint that she will be excluded in the future form party debates and that in the past the Respondents violated her constitutional rights by barring her from debates. This Court specifically held that "allegations that she or Reform Party candidates will be excluded from future debates do not, as a matter of law, allege an ongoing violation of federally-protected rights. Instead, they amount to conjecture regarding discrete future events. Mere conjecture is insufficient to transform a one-time event into a continuing governmental practice or an ongoing violation." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. Va. 1999). Consequently, there is no resemblance between the *DeBauche* holding and the facts in this case.

In the present case there is an ongoing unconstitutional governmental action in the form of license disciplinary restrictions perpetuated by the publication, continued sanction, enforcement  and holding of record by the Board Respondents of the unconstitutional 2006 Order and the 2008 letter of concern. There is no conjecture about the present and continued public nature, enforcement and restrictions imposed upon Appellant's practice of medicine by the unconstitutional 2006 Order and the 2008 letter. Here the unconstitutional state officials' action continues and will continue unabated in full force and effect unless the relief sought in the complaint is granted. Consequently the District Court's reliance on *Trani*, 191 F.3d 499, 505, *supra*, is misplaced.

The District Court's reliance on both *Puerto Rico Aqueduct & Sewer Autority v. Metcalf & Eddy Inc.*, 506 U.S. 139, 146 (1993) for the proposition that an ongoing and effective 2006 Order and the 2008 letter of concern are actions of the past are similarly misplaced.

In *Puerto Rico Aqueduct & Sewer Autority*, 506 U.S. 139, 146, *supra* (1993) the autonomous government instrumentality in Puerto Rico which was responsible for providing water and sewer service to the inhabitants of Puerto Rico was sued by a private engineering firm in a diversity action in the United States District Court for the District of Puerto Rico. The engineering firm alleged (1) breach of contract, and (2) damage to the firm's business reputation. The instrumentality,

alleging that it was an "arm" of the state and that the action was therefore prohibited by the Federal Constitution's Eleventh Amendment, moved to dismiss the action. The District Court denied the motion to dismiss by finding that, because the instrumentality's ability to raise funds for payment of its contractual obligations would not affect Puerto Rico's funds, the instrumentality did not qualify for immunity under the Eleventh Amendment. The instrumentality appealed such denial to the United States Court of Appeals for the First Circuit. The First Circuit Court of Appeals, noting that Puerto Rico was to be treated as a state for Eleventh Amendment purposes, dismissed the appeal for want of appellate jurisdiction and expressed the view that states and their agencies were barred from taking an immediate appeal from a District Court's denial of a motion to dismiss based on a claim of Eleventh Amendment immunity (945 F.2d 10).

On certiorari, the United States Supreme Court reversed and remanded. It was held that a District Court's order denying a motion by a state or a state entity to dismiss a civil action on grounds of immunity from suit in federal court, under the Eleventh Amendment, is immediately appealable under the collateral order doctrine. In *Puerto Rico Aqueduct*, the US Supreme Court never held that existing adjudicative Orders and decisions of state officials which are permeated by bias undue influence and fraud should remain standing simply because the unconstitutional action of the state officials was not discovered until later in time.

26

Nor does the holding in *Puerto Rico Aqueduct*, support the District Court's conclusion that unconstitutional deprivation of due process rights through the present and future continued effect of the 2006 Order and 2008 letter of concern are not subject to the *Ex Parte Young* exception.

Similarly *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 231 (S.D.N.Y. 2013) is of no moment to the issues in this case. The citation referred to by the District Court brings up the case of *Amtrak v. McDonald*, 978 F. Supp. 2d 215 (S.D.N.Y. 2013). In that case, the question presented was whether New York State has the authority to condemn property owned by National Railroad Passenger Corporation, known as Amtrak, in the face of certain federal statutes that created Amtrak and govern the use of its property. Amtrak brought the action against the Commissioner of the New York State Department of Transportation, asserting that the Commissioner's effort to condemn Amtrak-owned property is preempted by federal law.

Unlike in the present case, in *Amtrak*, 978 F. Supp. 2d 215, 219 (S.D.N.Y. 2013) the state already condemned Amtrak's property and no further order affecting Amtrak's rights was in effect at the time of the action. Certainly no prior adjudicative order affected by bias undue influence or fraud was continuously in effect at the time Amtrak brought the action. In short the issues which were adjudicated *Amtrak v. McDonald*, does not bear even a remote resemblance to the

27

present issues in the present case where Appellant's due process rights continue to be violated as alleged in the complaint.

The District Court's reliance on the Massachusetts District Court's case of *Caesar's Massachusetts Dev. Co., LLC v. Crosby*, 2014 WL 2468689 for the proposition that the actions of the individual Board Respondents in continuing to publish, enforce and maintain the 2006 Order and the 2008 letter of concern amount to past violations of the law which are not subject to the *Ex Parte Young* exceptions is similarly misplaced. That case is discussed in Board Respondents reply memorandum A. pp. 556-557 and was superseded by the First Circuit holding in the same case. Exhibit "A" addendum to the brief.

The US Court of Appeals for the First Circuit issued an opinion in the appeal in the same case under case No. 14-1681. *See* Exhibit "A" hereto - addendum to this brief pursuant to local Rule 28 and 31. That opinion controls the issues and the outcome of the Massachusetts District Court case cited by the court below in this case. As can be seen from the same, an investigatory report of the Massachusetts Gaming Commission found the Appellants in that case unsuitable as proposed operators of a casino for which another entity was seeking a license. In the underlying action the operator brought a claim pursuant to 28[sic] 42 U.S.C. Sec. 1983 including counts denying Fifth and Fourteenth Amendment procedural and

substantive due process claims and seeking the withdrawal of the investigative report and cessation of reliance on the same by the Commission.

The First Circuit affirmed the dismissal of the lawsuit by the District Court "on two pivotal grounds: (1) the Appellant has alleged no cognizable protected property interest said to have been infringed upon by the Fifth and Fourteenth Amendment due process and (2) class-of-one Fourteenth Amendment equal protection does not extend to redress action taken under state law authorizing the exercise of highly discretionary judgment in response to an application to licensing activity." Exhibit "A" p. 3.

The District Court in this case improvidently misread the facts and claims of *Caesars* and erroneously applied them to this case.

The District Court in this case surmises that because the Appellant alleges in the complaint that the investigative process was also tainted by bias, somehow the investigative report at issue in *Caesar's Massachusetts Dev. Co., LLC v. Crosby* is the same as the 2006 adjudicative Order and the 2008 formal disciplinary letter of concern. They are not. Adjudicative Orders and formal disciplinary actions which are permeated by unconstitutional bias are simply nullified by the Courts. *Hathcock*, 53 F.3d 36; *Howell*, 2009 U.S. Dist. LEXIS 22723, 21 (D.S.C. Mar. 19, 2009) citing *Aetna Life*, 475 U.S. 813, 824-27, *supra.*

29

The Appellant in *Caesar*, had no due process right stated in his complaint. *See* Exhibit "A" hereto. By contrast, the medical license disciplinary process at issue in this case is constrained by constitutionally protected due process. *State v. Atwood*, 27 N.C. App. 445, 449 (N.C. Ct. App. 1975) citing *Sniadach v. Family Finance Corp*., 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969); *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970).

The issue of the adjudication of disciplinary issues by an impartial tribunal is a fundamental due process right. *See*, *e.g.*, *Patterson v. Ramsey*, 413 F. Supp. 523, 535 (D. Md. 1976) citing *Satterfield v. Edenton-Chowan Board of Education*, 530 F.2d 567 (4th Cir. 1975); *Vance v. Chester County Board of School Trustees*, 504 F.2d 820 (4th Cir. 1974); *Grimes v. Nottoway County School Board*, 462 F.2d 650, 653 (4th Cir. 1972); *Hurles v. Ryan*, 650 F.3d 1301, 1309 (9th Cir. Ariz. 2011). Such issues were not present in *Cesar* at all.

While most claims of the adjudicator's bias are resolved "by common law, statute, or the professional standards of the bench and bar," the Due Process Clause of the Fourteenth Amendment "establishes a constitutional floor." *Hurles*, 650 F.3d 1301, 1309, *supra*; citing *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) (citations omitted). To safeguard the right to a fair trial, the Constitution requires judicial recusal in cases where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally

tolerable." *Id.* citing *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). "The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S. Ct. 2252, 2262, 173 L. Ed. 2d 1208 (2009).

In addition to the foregoing Fourteenth Amendment floor set for adjudicative bias, the North Carolina legislature enacted the State Government Ethics Act codified in N.C. Gen. Stat. Secs. 138A-1 through Sec. 138A-45. Those statutory provisions were enacted on August 6, 2006, before the conclusion of the hearings and issuance of the 2006 Order of discipline in August 21, 2006. The statutes specifically mandate that state officials such as Rhyne recuse themselves and do not participate either in state investigations or in adjudicative proceedings where they have a conflict of interest such as the one recited in the complaint. Moreover, the same statutory provisions state that the state officials have an ongoing obligation to investigate their bias and to disclose the same once it is uncovered. Clearly the purpose of the statutory enactments was to raise the bar on the Fourteenth Amendment floor requirements.

The complaint alleges that Rhyne and the Board respondents concealed her bias and financial interest in the outcome of the 2006 Order and the 2008 letter of concern. She improvidently confessed to the same in the affidavit of June, 2014. A.

31

pp. 36-48. Shortly after that time the underlying action was brought. The complaint further alleges that the entire process upon which the continuous constitutional violations are predicated is fraught by bias, undue influence and fraud.

The Appellant alleges in the complaint A. pp. 28-58 that both the minimum constitutional requirements of the "unbiased" tribunal and the state statutes safeguarding the constitutional requirements were violated for all of the reasons set forth in the complaint. These allegations fall squarely within the minimum amount necessary to fall within the foregoing jurisprudence which protects Appellant's constitutionally protected due process rights.

A violation of constitutional rights amounts to irreparable harm. *Faulkner v. Jones*, 10 F.3d 226 (4th Cir. 1993); *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987); *United States v. Charleston County*, 318 F. Supp. 2d 302, 326 (D.S.C. 2002); *Elrod v. Burns*, 427 U.S. 347, 373, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976). "[A] Appellant can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the Appellant's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing cases); *cf. Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ("[T]he denial of a constitutional right . . . constitutes irreparable harm for purposes of equitable jurisdiction.").

Because the Appellant alleged due process constitutional violations, her sufficiently alleged irreparable harm in connection with his request for injunctive relief. By contrast, *Cesar* did not present any of the significant constitutional issues which are present here.

Consequently, the District Court's reliance on the Mass. District Court opinion in *Caesar*, *supra*, where no constitutional rights were found to be alleged is misplaced.

In sum, none of the cases cited by the District Court in support of its application of Eleventh Amendment immunity to all Board Respondents support the proposition that a constitutionally flawed adjudicative 2006 Order of discipline and the 2008 letter of concern should stand undisturbed because the Appellant is seeking redress of past constitutional violations.

Consequently, the District Court's order should be reversed in its entirety to the extent that it invoked Eleventh Amendment immunity to shield the Board respondents from the underlying action because it is unsupported by any of the citations mentioned therein.

## POINT II

### THE DISTRICT COURT'S ORDER GRANTING DISMISSAL AGAINST THE BOARD RESPONDENTS IS CONTRARY TO RELEVANT JURISPRUDENCE AND CONSTITUTES <u>REVERSIBLE ERROR.</u>

The District Court's order amounts to reversible error to the extent that it granted the summary dismissal of the complaint as to the Board Respondents because it is contrary to applicable jurisprudence.

**(A)    Eliventh Amendment immunity does not apply to bar the assertion of <u>subject matter jurisdiction against any of the Board Respondents.</u>**

The United States Supreme Court, the US Court of Appeals for the Fourth Circuit as well as US District Courts within this jurisdiction repeatedly held that claims such as the ones brought by the Appellant in the present action seeking prospective and present declaratory and injunctive relief are not barred by Eleventh Amendment Immunity.

In *Papasan v. Allain*, 478 U.S. 265, 278 (1986) the US Supreme Court held that "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law". Citing *Green* v. *Mansour*, 474 U.S. 64, 68 (1985). Similarly in *Papasan*, 478 U.S. 265, 281-282 the US Supreme Court upheld the decision of the US Court of Appeals that Appellant's law suit alleging past present and future violations of the Fourteenth Amendment constitutional rights.

34

The District Court at A. pp. 576-577 contends that *Republic of Paraguay*, 134 F.3d at 628 vitiates the holding of *Papasan* because the complaint alleges past constitutional violations. For all of the reasons articulated hereinabove, the case of *Republic of Paraguay*, 134 F.3d at 628 is of no moment to the issues present in this case. In addition the complaint alleges present and future violations of due process for all of the reasons articulated hereinabove.   Consequently the Appellant respectfully submits that the District Court's rejection of *Papasan*, *supra* and *Milliken v. Bradley*, 433 U.S. 267 (1997) based upon the application of *Republic of Paraguay*, *supra*, constitutes reversible error.

In *Gray v. Laws*, 51 F.3d 426, 430 n.1 (4th Cir. N.C. 1995) the Fourth Circuit Court of Appeals stated that "[a] state and its officers are not entitled to Eleventh Amendment protection…where Appellant seeks prospective injunctive relief." Citing *Edelman v. Jordan*, 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974); *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908) *also see Nelson v. Strawn*, 897 F. Supp. 252, 255 (D.S.C. 1995) – Eleventh Amendment not applicable in prospective injunctive relief because such relief does not amount to federal interference with a state treasury. *Id. Edelman v. Jordan*, 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974); *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908). *See also Vollette v. Watson*, 937 F. Supp. 2d 706, 714 (E.D. Va. 2013) citing *Ex parte Young*, 209 U.S. 123, 159-160.

35

The Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. W. Va. 2001) citing *Ex parte Young*, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908); *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999) (citing *Green v. Mansour*, 474 U.S. 64, 68, 88 L. Ed. 2d 371, 106 S. Ct. 423 (1985)). *Also see Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 791 (E.D. Va. 2003); *Carboni v. Meldrum*, 949 F. Supp. 427, 433 (W.D. Va. 1996), *aff'd*, 103 F.3d 116 (4th Cir. 1996) and *Friendship Villa-Clinton, Inc. v. Buck*, 512 F. Supp. 720, 728 (D. Md. 1981).

In the present case the District Court erred in concluding that the Appellant brought an action for retrospective declaratory and injunctive relief for all of the reasons articulated hereinabove. For all of the reasons articulated in this brief the underlying complaint takes direct aim at the unconstitutionality and illegality of the 2006 Order and the 2008 letter of concern as they exists in full force and effect today and as they will exist in the future if the Appellant is not granted the relief sought in the complaint.

The Appellant is seeking present and prospective injunctive and declaratory relief preventing the Respondents from further violating Appellant's constitutionally protected rights by presently and in the future displaying the 2006

36

Order of discipline and the 2008 letter of concern as official Board action and by maintaining the restrictions of the 2008 Order on Appellant's medical license.

In addition, in *Stanley v. Darlington County Sch. Dist.*, 879 F. Supp. 1341, 1362 (D.S.C. 1995) the US District Court held that *Ex parte Young* does not require that a state official have personal involvement in the alleged constitutional violation to fall within the exception to immunity under the Eleventh Amendment. *Ex parte Young* requires only that the state official who is sued must "by virtue of his office have some connection" with the unconstitutional act or conduct complained of. "All that is required is that the official be responsible for the challenged action." *Id.* citing *Ex parte Young*, 209 U.S. 123, 157 (1908); *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988), *reh. denied*, 896 F.2d 479 (11th Cir. 1989), *cert. denied*, 495 U.S. 957, 110 S. Ct. 2562, 109 L. Ed. 2d 744 (1990).

In this case all of the individual Board Respondents are past and present members of the Board who by virtue of their past and present office have some connection with either the issuance of the unconstitutional 2006 Order and 2008 letter of concern or with their present and future enforcement and publication of the same documents as a disciplinary record. Consequently all of the individual Board Respondents are connected and committed to the present and future violation of Appellant's constitutionally protected due process rights as set forth hereinabove. *Stanley*, 879 F. Supp. 1341, 1362.

For all of the foregoing reasons the Order of the District Court constitutes reversible error because the same is contrary to applicable jurisprudence regarding the application of the *Ex Parte Young* exception to Eleventh Amendment immunity.

## POINT III

### THE DISTRICT COURT'S GRANT OF THE MOTION TO DISMISS BASED UPON ARTICLE III STANDING <u>AMOUNTS TO REVERSIBLE ERROR.</u>

The District Court erroneously applied Article III lack of standing to dismiss the complaint against the past Board members. In its Order A. pp. 578-579 the District Court rationalized that because the past members of the Board are no longer active state officials, they do not have the authority to comply with an injunction and a declaratory judgment will have no legal effect on these individuals. The District Court did not cite any authorities for this proposition. A. pp. 578-579.

The Order is correct in noticing that the Appellant does not contest the conclusion that injunctive relief can be applied only to present state officials who can remove the constitutionally flawed 2006 Order and 2008 letter of concern of record. A. pp. 578-579.

The Order however constitutes reversible error insofar as it applied Article III lack of standing paradigms to dismiss the claim for declaratory relief against the actions of the past Board members in their past official capacities.

## (A)    General applicable principles regarding Article III standing.

Article III of the Constitution restricts the federal courts to the adjudication of "cases" and "controversies." The threshold requirement of standing is "perhaps the most important" condition of justifiability. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153-154 (4th Cir. S.C. 2000) citing *Allen v. Wright*, 468 U.S. 737, 750, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). The standing inquiry ensures that a Appellant has a sufficient personal stake in a dispute to render judicial resolution appropriate. *See id.* at 750-51. The standing requirement also "tends to assure that the legal questions presented to the court will be resolved, not in the rarefied atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1982).

To meet the constitutional minimum for standing, "[a] Appellant must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751. This formula

includes three elements: (1) injury in fact; (2) traceability; and (3) redressability. *Friends of the Earth, Inc.*, 204 F.3d 149, 153-154, *supra*; citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). The injury in fact prong requires that Appellant suffer an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent. *See id.* at 560. The traceability prong means it must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court. *See id.* Finally, the redressability prong entails that it must be likely, and not merely speculative, that a favorable decision will remedy the injury. *Id*. citing *Lujan*, 504 U.S. 555, 561, *supra*. All of the foregoing elements were shown to exist in the record below. A. pp. 492-499. The District Court simply ignored the argument and the applicable legal paradigms regarding Article III standing.

**(B)**    **The Appellant has alleged the existence of an injury in fact.**

A violation of constitutional rights amounts to irreparable harm. Violation of Appellant's constitutionally protected due process rights amounts to irreparable harm in the context of a preliminary injunction. *Faulkner v. Jones*, 10 F.3d 226 (4th Cir. 1993); *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987); *United States v. Charleston County*, 318 F. Supp. 2d 302, 326 (D.S.C. 2002); *Elrod v. Burns*, 427 U.S. 347, 373, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976). "[A] Appellant can demonstrate that a denial of an injunction will cause irreparable harm if the claim

40

is based upon a violation of the Appellant's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing cases); *cf. Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ("[T]he denial of a constitutional right . . . constitutes irreparable harm for purposes of equitable jurisdiction.").

Because the Appellant stated in the complaint that his constitutional rights are and continue to be violated at the hands of the Board Respondents, for the reasons set forth in the complaint he has shown the existence of an injury in fact regarding Article III standing. *Friends of the Earth, Inc.*, 204 F.3d 149, 153-154; citing *Allen v. Wright*, 468 U.S. 737, *supra*.

### (C)    The Appellant alleged that the continuous injury caused to his due process rights by the continuous existence of the constitutionally flawed 2006 Order and 2008 letter is traceable to the Board Respondents.

The Appellant alleged that the violation of his constitutional rights due to adjudicative and state officials' bias stated in the complaint were traceable to defendant Rhyne's undisclosed business and financial relationship with BCBSNC which entity was seeking to put the Appellant out of business at the same time as the Board proceedings addressing the very same issues of concern to the insurer existed. A. pp. 28-58. In addition the Appellant alleged that Rhyne exerted undue influence on the past members of the Board through her position and expertise in order to issue the 2006 Order and the 2008 letter of concern which benefited

BCBSNC. The complaint further alleges that in turn the Board respondents became associated with the tainted process and the issuance and subsequent continued publication and enforcement of the constitutionally flawed official state action. A. pp. 28-58. The complaint further alleges that the present members of the Board continue and will continue to enforce and maintain of record the constitutionally flawed 2006 Order and 2008 letter of concern. A. pp. 28-58.

The traceability prong has thus been satisfied as the constitutional violations are alleged to be traced to the Board Respondents. *Allen*, *supra*, 468 U.S. at 751. *Friends of the Earth, Inc.*, 204 F.3d 149, 153-154, *supra*; citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992).

**(D)**    The redressability prong of the Article III standing has also been satisfied.

The complaint does allege that it is seeking prospective injunctive and declaratory relief with respect to existing state unconstitutional governmental action for all of the reasons articulated hereinabove. Consequently, the Appellant is seeking the permanent injunction pursuant to 42 U.S.C. § 1983 with respect to existing, recurring and prospective violations of Appellant's constitutional rights though the removal of the objects of the infringement from the database and permanent records of the Board Respondents. The Appellant is also seeking a declaration of his rights to have the continued and ongoing constitutional violations removed of record and declared null and void. A. pp. 28-58.

Moreover, the status of the past medical Board members as private citizens at the present time does not vitiate the continued violation of Appellant's constitutional rights simply because they acted as appointed state officials in the past. The constitutional violations alleged in the complaint continue to occur and be perpetuated today and in the future by the existence of the unconstitutional Board action. The fact that the past Board members are not state officials any longer does not absolve them of a declaration that the unconstitutional acts which were performed by them at the time when they were state officials and which continue through today and in the future are unconstitutional and illegal. Because the complaint seeks a declaration of present and future constitutional violations as affected by the acts of the past Board members, the present status of the Board past members is irrelevant.

Taking the District Court's rationale to a logical conclusion, any past action of any state official could avoid charges of past corruption, bias and undue influence so long as the same are concealed and hidden form the affected parties simply because their acts were in the past. As set forth above, when it comes to adjudicative orders and formal disciplinary action, that is not the law in this Circuit.

The Appellant is not suing the past Board members for actions which they took or are taking as private citizens since they retired. The Appellant is suing the

past Board members on a declaratory judgment relief because actions which they took in their official capacity while they were acting as Board members. Those actions still have repercussions today because of the existence and full force and effect of the 2006 constitutionally tainted 2006 Order and the existence of the 2008 letter of concern.

The District Court's holding that Article III lack of standing bars the suit against the past members of the Board because they are no longer state officials at the time when they got sued is of no moment to this action. The District Court did not recite any authority for this stated position.

In searching the record *de novo*, this Honorable Court will see that the Board Respondents erroneously relied in their memorandum in support of the motion to dismiss on *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) A. p. 233, for the proposition that there is a lack of standing with respect to the past members of the Board. Such reliance is misplaced. In that case the court noted that the Appellant sued the state officials in their individual capacity. That is not the care here. As acknowledged by the District Court in its order at A. p. 578 and as the caption of the underlying case as well as the allegations of the complaint indicate clearly, each past Board member is sued herein in their official capacity as the past member of the Board. A. pp. 14-27. Consequently, *Feit* is inapplicable with respect to the present capacity in which the past members of the Board are sued.

44

While still searching the record de novo, similarly misplaced is Respondents' reliance on *Clay v. Thompson*, 2014 U.S. Dist. LEXIS 96648 (M.D. Ala. June 26, 2014) A. 233 for the proposition that the Appellant cannot maintain a declaratory judgment action against the past members of the Board for their constitutional violations which have a continuous and future effect on the Appellant. In that case the Appellant admittedly sued the Respondents federal judges and prosecutors in their individual capacities. The Court held that such Respondents in their individual capacities do not have the power to act at all in Clay's criminal proceedings which resulted in his conviction.

That is not the case here. The past members of the Board are sued herein in their official capacities as past members of the Board not in their individual capacity. The fact that they are private citizens now does not shed their public official mantle at the time when they acted against the Appellant in the unconstitutional manner described in the complaint, which affects Appellant's constitutional due process rights through today as set forth above.

The District Court did not address the authorities cited by the Board Respondents hereinabove and it did not discuss their lack of applicability to the present case.

The Appellant does not contend that injunctive relief sought in the Second Claim of the complaint can be enforced by the past members of the Board. They

45

clearly have no authority to remove of record the 2006 Order and the 2008 letter which was issued in their official capacities during their tenure as only the current members do. That is why the injunctive relief is sought against the present members of the Board in their official capacities

## POINT IV

### THE DECISION OF THE DISTRICT COURT
### IS AGAINST THE INTEREST OF THE PUBLIC OF
### THE STATE OF NORTH CAROLINA.

One of the key elements in considering the application for injunctive relief for constitutional violations is the interest of the public. *Hughes Network Systems, Inc. v. Interdigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) and *Blackwelder Furniture Co.*, 550 F.2d 189 (4th Cir. 1977). The law in this jurisdiction is that "upholding constitutional rights is in the public interest." *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011).

A state is "in no way harmed by issuance of an injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

The District Court's Order simply ignored the public interest prong of the request for injunctive relief. According to the rationale in the District Court's order all adjudicative orders and disciplinary actions of state licensing boards shall

46

remain standing and shall be allowed to affect a licensee's due process rights even when the same orders of final disciplinary actions are affected by impermissible unconstitutional adjudicative bias which promotes the private financial interests of state officials and the private financial companies which can purchase their adjudicative services.

Under the District Court Order such ongoing unconstitutional adjudicative orders should be allowed to stand irrespective of the fact that they were procured by unconstitutional bias, fraud and undue influence which was not uncovered until Rhyne's confessional affidavit of June, 2014 came to light.

The flawed rationale behind such untenable position is that as long as public officials conceal their bias and personal financial interests at the time they violate a licensee's due process protected rights to an unbiased adjudicatory process as set forth above, the tainted unconstitutional and adjudicative action of the state officials should be allowed to continue to exist so long as the existing and continuous unconstitutional action was initiated and reached in the past and so long as the bias is not uncovered until some later time.

That is simply not the law in this circuit. As a matter of process all adjudicative orders affected by constitutional bias and flaws are challenged at the time when such bias is made known to the challenger and after the official Order or action is taken and not before that time. As a matter of process biased opinions and

orders are issued in the past and not in the present or in the future. All orders affected by constitutional bias which was present at the time of past adjudication are vacated at some time in the future. *Hathcock*, 53 F.3d 36; *Howell*, 2009 U.S. Dist. LEXIS 22723, 21; citing *Aetna Life*, 475 U.S. 813, 824-27, 106 S. Ct. 1580, 89 L. Ed. 2d 823; *Braswell*, 352 F. Supp. 2d 639, 645-646, *supra*.

Allowing the 2006 Order and the 2008 letter of concern to stand is tantamount to allowing state officials to make use of their public official positions to further their own financial interests and that of the private companies by which they are privately employed. The case law set forth above as well as the North Carolina State Government Ethics Act simply prohibit such untenable position.

The District Court's Order violates public interest because it refuses to allow the Appellant to proceed on the merits of his claims for an injunction which prevents the state from enforcing restrictions of the 2006 Order and the 2008 letter of concern which are likely to be found unconstitutional. *Giovani Carandola, Ltd.*, 303 F.3d 507, 521 (4th Cir. 2002), *supra*.

## VI.   CONCLUSION

For all of the foregoing reasons the District Court's order granting summary dismissal of the complaint pursuant FRCVP 12(b)(1) and 12(b)(6) should be reversed in its entirety because: (1) the Order is unsupported by the case law cited by the District Court in support of its dismissal based on Eleventh Amendment

48

immunity; (2) the Order is contrary to the relevant jurisprudence in circuit related to the applicability of Eleventh Amendment immunity; (3) the Appellant has satisfied all of the legal requirements for Article III standing with respect to past and present Board members; (4) the Order does not serve the public interest.

## VII.   STATEMENT PURSUANT TO FRAP 34 AND LOCAL RULE 34(a) REGARDING ORAL ARGUMENT

The Appellant hereby requests that oral argument of the issues presented in this case be allowed in accordance with Local Rule 34(a). The issues in this case impact the public interest of the people of the state of North Carolina and they are of paramount importance to the future of the like governmental officials operations in that state. The issues also call into questions the continuous unconstitutionality of the acts of state officials in that state in violation of constitutionally protected due process rights and the North Carolina State Government Ethics act.

The outcome of this case is of paramount importance to the manner in which state officials conduct their business in North Carolina. This case is one of first impression brought against the members of the Medical Board in that state.

Dated: July 1, 2015

Attorney for the Appellant:
/s/ Jacques G. Simon
Jacques G. Simon, Esq.
2174 Hewlett Avenue, Suite #201
Merrick, NY 11566
Phone: (516) 378-8400
Fax:   (516) 378-2700
Email: jgs@jacquessimon.com

49

# ADDENDUM

# Exhibit A

# United States Court of Appeals
## For the First Circuit

---

No. 14-1681

CAESARS MASSACHUSETTS MANAGEMENT COMPANY, LLC,
CAESARS MASSACHUSETTS DEVELOPMENT COMPANY, LLC,
CAESARS MASSACHUSETTS INVESTMENT COMPANY, LLC, and
CAESARS ENTERTAINMENT CORPORATION,

Plaintiffs, Appellants,

v.

STEPHEN P. CROSBY
and KAREN WELLS,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before
Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

---

Joan A. Lukey, with whom C. Thomas Brown, Eugene L. Morgulis, Ropes & Gray LLP, Justin J. Wolosz, and Choate Hall & Stewart LLP, were on brief, for appellants.
John M. Stephan, Assistant Attorney General, with whom Martha Coakley, Attorney General of Massachusetts, Janna J. Hansen, Assistant Attorney General, and Julia Kobick, Assistant Attorney General, were on brief, for appellees.

---

February 13, 2015

---

**SOUTER, Associate Justice**.  The plaintiff-appellant Caesars
Entertainment Corporation and three Massachusetts affiliates
(collectively, Caesars) were subject to an investigatory report by
the Massachusetts Gaming Commission finding them unsuitable as
proposed operators of a casino for which Sterling Suffolk
Racecourse, LLC (SSR) sought a license.  This action brought by
Caesars under 28 U.S.C. § 1983 includes counts with (a) official
capacity claims charging denial of Fifth and Fourteenth Amendment
procedural and substantive due process and equal protection of the
laws by the Commission's chairman, Stephen Crosby, and Karen Wells,
Director of the Commission's Investigations and Enforcement Bureau
(IEB), and seeking withdrawal of the report and cessation of any
further reliance on it by the Commission; (b) individual capacity
claims against Crosby on the same grounds, seeking compensatory and
punitive damages; and (c) a claim subject to supplemental
jurisdiction for liability under Massachusetts law for tortious
interference with a contract between Caesars and SSR.  The district
court dismissed the federal claims under Federal Rule of Civil
Procedure 12(b)(6) as beyond the scope of federal affordable
relief, and consequently exercised its discretion to dismiss the
state law claim as standing alone.  This appeal touches on a
multiplicity of legal and factual issues including Eleventh
Amendment state immunity, qualified immunity of individuals,
control of IEB by Crosby as chairman of the Commission, and

-2-

theories of protected property, among others.  In our review de novo, however, we affirm the dismissal on two pivotal grounds: Caesars has alleged no cognizable protected property interest said to have been infringed in violation of Fifth and Fourteenth Amendment due process, and class-of-one Fourteenth Amendment equal protection does not extend to redress action taken under state law authorizing the exercise of highly discretionary judgment in response to an application to license activity carrying substantial risks of commercial and social harm.

I.

Caesars' third amended complaint, together with documents incorporated by reference and matters of public record subject to judicial notice, see Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008), disclose the following facts as of relevant times, to be taken as true under Rule 12(b)(6).  Under the authority of the Massachusetts Expanded Gaming Act, 2011 Mass. Acts ch. 194 (largely codified at Mass. Gen. Laws ch. 23K), the Commonwealth of Massachusetts is in the throes of licensing casinos, one for each of three regions of the state.  The statute assigns that responsibility to a Gaming Commission of five members, of which the defendant-appellee Stephen Crosby is chairman.  The IEB is the Commission's investigatory arm for examining the suitability of applicants for a casino license and of persons and corporations affiliated with an applicant to exercise the license sought (spoken

-3-

of as "qualifiers"). As noted, the applicant for one such license
is SSR, a corporation doing business in Massachusetts and not a
party to this action, and Caesars is a qualifier. SSR wishes to
place a casino in Revere and East Boston.

The IEB's enquiry into Caesars' conduct of business in Nevada
and elsewhere led to a public report recommending that the
Commission find that Caesars had not carried its burden to
demonstrate its suitability by clear and convincing evidence; a
near-certain consequence of the report would be denial of SSR's
application. The IEB gave four reasons: (1) through a subsidiary,
Caesars entered into a licensing agreement with Gansevoort Hotel
Group, LLC, which is partially owned by an individual with alleged
ties to Russian organized crime; (2) Caesars hired Mitchell Garber,
who had formerly served as the chief executive officer of two
internet gambling companies that entered into non-prosecution
agreements with the United States Attorney's Office for the
Southern District of New York; (3) Caesars had a history with
Terrance Watanabe, a former high roller, who sued Caesars for
allegedly encouraging him to gamble while intoxicated; and (4)
Caesars was highly leveraged, to the point that its monthly debt
service exceeded its cash flow.[1]

---

[1]    On January 15, 2015, Caesars' largest subsidiary, Caesars
Entertainment Operating Corporation, filed for Chapter 11
bankruptcy protection. See Chapter 11 Voluntary Petition, In re
Caesars Entertainment Operating Company, Inc., No. 15-bk-1145
(Bankr. N.D. Ill. Jan. 15, 2015), ECF No. 1.

-4-

A competing application was filed by Wynn Resorts, Limited, for a site in nearby Everett. One of the owners of the Everett real estate is Paul Lohnes, a long-time acquaintance of Crosby's, who in the past had invested in one of Crosby's business enterprises (allegedly at a loss) in which he had actively participated. When word circulated that a previously undisclosed co-owner of the Everett land had a felony record, Crosby told his fellow commissioners of his relationship with Lohnes and subsequently informed both the Governor, as required by law, and the Massachusetts Ethics Commission, which advised that, so long as Crosby used "objective criteria," he was not disqualified to act on the competing applications by reason of his relationship with Lohnes. A short while after that, Crosby disclosed the relationship publicly and recused himself from further participation in considering the license for the region of the state in which SSR and Wynn wished to operate.

Caesars alleges not only that Crosby was biased, owing to the Lohnes connection and Crosby's obligation to recompense him for their past dealings, but that Crosby took, or required Wells and the IEB to take, specific actions intended to favor Wynn and Lohnes and to place SSR and Caesars at a disadvantage. The allegations say that Crosby urged Wynn to compete for the license and to remain an applicant at one point when Wynn was poised to withdraw in exasperation with the proceedings. Crosby allegedly caused Wells

-5-

and the IEB to hold it against Caesars that the Gansevoort
organization may have had illegal dealings with Russian criminal
connections, whereas Wynn was not taxed with a suspect Macau
gambling connection or Lohnes's shady associate.  Wynn was
allegedly favored in setting a local referendum date for its
Everett application, whereas Caesars was denied adequate (and
statutorily provided) preparation time for an adjudicatory hearing
to contest the facts of the unfavorable recommendation proposed.
The IEB report, together with informal advice that the SSR
application would be doomed by Caesars' proposed participation,
caused Caesars to accede to SSR's request that it withdraw from
their contractual relationship in order to save any chance of
success that SSR might have.

## II.

The district court addressed the procedural due process claim
under the rule announced in Bd. of Regents of State Colls. v. Roth,
408 U.S. 564, 576-77 (1972), that an action for deprivation of
property by state action without due process of law must include a
showing that state law protects an identified property right said
to have been violated.  The substantive due process claim for
deprivation of property by the arbitrary exercise of government
power, of course, requires a like demonstration of a property right
infringed.  See Centro Medico del Turabo, Inc. v. Feliciano de
Melecio, 406 F.3d 1, 8 (1st Cir. 2005).  Caesars claimed property

in an implied contract with the state, promising a license
applicant fair play in reaching a decision, as well as property in
its contract with SSR.  The district court accepted both theories,
but Caesars apparently placed principal reliance on the implied
contract, which was the primary subject of the court's discussion
in concluding that Caesars had adequately pleaded a violation of
due process.  It nonetheless dismissed the official capacity claims
as barred by state immunity under the Eleventh Amendment, and
dismissed the individual liability claims on the ground of
qualified immunity, see Maldonado v. Fontanes, 568 F.3d 263, 268-69
(1st Cir. 2009).  The equal protection claims were dismissed for
failure of adequate pleading that the competing entities were
similarly situated, and the state cause of action was subject to
discretionary dismissal for want of a federal claim supporting the
exercise of supplemental jurisdiction.

III.

The first step in seeking relief from a deprivation of
property without due process in violation of the Fifth and
Fourteenth Amendments is a legally plausible allegation of a
"protected property interest" recognized under state law.  See
Centro Medico, 406 F.3d at 8 (citing Roth, 408 U.S. at 577).
Caesars has not made an allegation sufficient to complete that
first step.

Two, and possibly three, claims of a protected property

-7-

interest have been pressed or at least indicated before us.[2]  The
district court devoted principal attention to a theory of protected
property interest for which there was then some Massachusetts
authority, to the effect that submitting a bid for a public
contract creates an implied contract giving rise to a right of
property protected against unfairness in considering the bid.  See
Paul Sardella Constr. Co. v. Braintree Hous. Auth., 329 N.E.2d 762,
767 (Mass. App. Ct. 1975), aff'd, 356 N.E.2d 249 (Mass. 1976).  For
the purpose of federal-question property analysis, this precedent
may well have suffered from circularity, but in any event while
this appeal was pending the theory's application to casino license
application was clearly repudiated by the Supreme Judicial Court of
Massachusetts in Abdow v. Att'y General, 11 N.E.3d 574, 582-88
(Mass. 2014) (holding that, because the regulation of gambling
falls within a state's core police power, neither a casino licensee

---

[2]    We are not sure that Caesars does refer to a third
theory, though if it does any argument for it is circular.  Caesars
quotes, out of its context, an observation of the district court
that it would violate due process for state actors to conspire
deceitfully and purposely to deprive an applicant for a state-
provided license of the opportunity to compete for it.  Appellants'
Br. 29.  But in making that statement the court simply was not
enquiring into the existence of the property said to have been the
subject of deprivation.  Suffice it to say that there is no
freestanding right to due process that is itself a form of property
that the right to due process is guaranteed to protect.  See Town
of Castle Rock v. Gonzales, 545 U.S. 748, 772 (2005) (Souter, J.,
concurring) ("[I]n every instance of property recognized by this
Court as calling for federal procedural protection, the property
has been distinguishable from the procedural obligations imposed on
state officials to protect it.").

-8-

nor an applicant for a casino license possesses the type of
entitlement necessary to conclude that the license or application
is property under state law). <u>See</u> Appellants' Br. 31 n.8
(conceding this point).

That decision has left Caesars with only its alternative
theory of property, which it repeatedly states as a general rule
that "[c]ontracts between private parties, as the Caesars Entities
enjoyed with SSR . . .[,] give rise to a protected property
interest for constitutional purposes." <u>Id.</u> at 27 (citation and
internal quotation marks omitted). At this level of generality,
however, the statement is too blunt to address the specific
question in this case, which is whether any property interest
created by a private contract like the Caesars-SSR agreement is
protected property as against non-party state actors whose untoward
conduct eliminates an applicant or its qualifiers from competition
for a casino license.

An examination of the state cases recognizing property rights
created by private contract will show why the general statement
misses the narrower question pertinent here. To be sure, contracts
may be a form of property under state law. <u>See</u> <u>Bos. Elevated Ry.</u>
<u>Co.</u> v. <u>Commonwealth</u>, 39 N.E.2d 87, 109 (Mass. 1942) ("Valid
contracts are property, whether the obligor be a private
individual, a municipality, a state, or the United States."
(quoting <u>Lynch</u> v. <u>United States</u>, 292 U.S. 571, 579 (1934))); <u>see</u>

also 31 <u>Williston on Contracts</u> § 78:68 (4th ed.) (discussing contracts as property in the context of bankruptcy estates). The mere existence of a contract or its breach, however, is not sufficient to show a "protected property interest" for purposes of a due process claim of improper government interference. <u>See</u> <u>Redondo-Borges</u> v. <u>U.S. Dep't of Hous. & Urban Dev.</u>, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property."). Rather, the critical enquiry is whether the aggrieved party to the contract has a legitimate claim of "entitlement" to the benefits of the contract that government action may not abridge. <u>See</u> <u>Allen</u> v. <u>Bd. of</u> <u>Assessors</u>, 439 N.E.2d 231, 233 (Mass. 1982) (quoting <u>Roth</u>, 408 U.S. at 577).

In its simplest form, this issue is approached with some frequency in suits by employees of the government itself challenging their discharge. In these cases, Massachusetts courts have consistently held that some sort of for-cause termination provision is necessary in order for a contractual benefit of continued employment to qualify as "protected property" for purposes of due process. <u>E.g.</u>, <u>In re Powers</u>, 987 N.E.2d 569, 584 (Mass. 2013); <u>German</u> v. <u>Commonwealth</u>, 574 N.E.2d 336, 339 (Mass. 1991); <u>Harris</u> v. <u>Bd. of Trs. of State Colls.</u>, 542 N.E.2d 261, 265 (Mass. 1989); <u>Knox</u> v. <u>Civil Serv. Comm'n</u>, 825 N.E.2d 101, 105

-10-

(Mass. App. Ct. 2005); Costello v. Sch. Comm., 544 N.E.2d 594, 597-98 (Mass. App. Ct. 1989); see also Clukey v. Town of Camden, 717 F.3d 52, 56-58 (1st Cir. 2013) (collecting examples of circumstances in which other public employment benefits are protected under due process). That is to say, contractual property protected as against a contracting government requires some independently imposed or agreed-upon limitation on the government's freedom to act. Thus, in suits relating to applications or renewals of state-issued permits or licenses (which may be memorialized in contracts with the state), Massachusetts courts have held that, if the state actor retains discretion to grant or withhold the permit or license, there is no protected property interest. E.g., Roslindale Motor Sales, Inc. v. Police Comm'r, 538 N.E.2d 312, 314-15 (Mass. 1989); R.V.H., Third, Inc. v. State Lottery Comm'n, 716 N.E.2d 127, 130 (Mass. App. Ct. 1999); accord KES Brockton, Inc. v. Dep't of Pub. Utils., 618 N.E.2d 1352, 1356 (Mass. 1993). In some, albeit rare, instances, even an issued license is not a protected property interest if the recipient is on notice that the license is subject to termination or restriction. E.g., Lotto v. Commonwealth, 343 N.E.2d 855, 857 (Mass. 1976); Take Five Vending, Ltd. v. Town of Provincetown, 615 N.E.2d 576, 580-81 (Mass. 1993).

These, latter, discretionary licensing cases focus the issue in this case. Of course, at this point Caesars is not claiming

-11-

property in a contract to which the state is a party, but it is
claiming property in a contract (with SSR).  But because its value
is an expected benefit that is dependent on the response of the
state to a license application, the analysis of property as
expected value is therefore the same as in the licensing cases just
cited.[3]  See generally VMark Software, Inc. v. EMC Corp., 642
N.E.2d 587, 590 n.2 (Mass. 1994) (describing the general rule for
recovery for breach of contract actions under Massachusetts law as
"expectation damages," wherein "the wronged party [is] . . . placed
in the same position as if the contract had been performed"
(internal quotation marks omitted)).  The issue, then, is whether
Massachusetts law would recognize in the request for action by the
Commission a source of expectable value sufficiently reliable to be
protected as property.  The licensing cases point to a negative
answer, and the casino licensing law does the same with
unmistakable emphasis.

To begin with, such an expectation seems to be in mortal
tension with Abdow: if there would be no deprivation of protectable
property in a casino operation by a legislative repeal of all
casino licensing authority after licenses had been issued, it is
difficult to imagine that the Massachusetts courts would find a

---

[3]    We are not concerned here with whatever rights Caesars
and SSR may have in relation to each other, whether the license be
granted or not.  The only damage identified to us is understood to
be the loss of valuable benefit anticipated from operating under
the casino license sought.

-12-

protectable interest in any claimed expectation of obtaining such a license applied for but yet to be issued. <u>See</u> 11 N.E.3d at 586.[4]

In fact, expectation of value on the part of any applicant appears untenable as a property interest under the terms of the licensing statute itself, which invests the Commission with an apparently unlimited scope for discretionary judgment, reflecting the commercial and social risks presented by casino operation, <u>see</u> <u>Selectmen</u> v. <u>State Racing Comm'n</u>, 86 N.E.2d 65, 70 (Mass. 1949) (observing that, while Massachusetts has legalized some forms of gambling, "because of the nature of the business," it "can be abolished at any time that the Legislature may deem proper for the safeguarding and protection of the public welfare"). The very breadth of the subjects as identified for IEB investigation speak to the degree of that discretion: "integrity, honesty, good character and reputation of the applicant," Mass. Gen. Laws ch. 23K, § 12(a)(1); "financial responsibility, character, reputation, integrity and general fitness . . . to warrant belief by the commission that the applicant will act honestly, fairly, soundly and efficiently," <u>id.</u> § 12(a)(7); "any . . . reason, as determined by the commission, as to why it would be injurious to the interests of the commonwealth in awarding the applicant a gaming license," <u>id.</u> § 12(b).

---

[4] <u>Abdow</u> was concerned with the state's exercise of core police power by legislation or referendum, but its denial of a property interest was stated more broadly.

-13-

The authorized judgment inherent in these spacious mandates is at odds with judicial reviewability for the purpose of property protection, as the statute expressly confirms. "The commission shall have full discretion as to whether to issue a license. Applicants shall have no legal right or privilege to a gaming license and shall not be entitled to any further review if denied by the commission." <u>Id.</u> § 17(g). This language is at war with any claims by an applicant or its contracting parties to have an expectation of value subject to property protection against state discretionary action. <u>See</u> <u>Town of Castle Rock</u> v. <u>Gonzales</u>, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). On the contrary, participating in an application for a casino license is accorded no status more substantial than an act of hope alone, <u>see</u> <u>Abdow</u>, 11 N.E.3d at 585 ("[T]he possibility of abolition is one of the many foreseeable risks that casinos, slots parlors, and their investors take when they choose to apply for a license and invest in a casino or slots parlor."), and "dashed hopes [alone] . . . cannot yield a constitutionally protected property interest," <u>Redondo-Borges</u>, 421 F.3d at 9.

In Caesars' attempt to establish something more at stake it rests heavily, not on a contract case, but on the licensing case of <u>Kennie</u> v. <u>Natural Resources Department of Dennis</u>, 889 N.E.2d 936

-14-

(Mass. 2008). But we think <u>Kennie</u> is persuasive in illustrating the difference between a hope to get a casino license and traditional, preexisting property right giving rise to something more, even though the property is subject to reasonable regulation. That case stands for entitlement as a matter of state law to a fair administrative process on an application for a permit to construct a dock as an adjunct to waterfront property, so long as it does not infringe the rights of neighbors or public use of waterways and submerged land, but <u>Kennie</u> does not so much as suggest the recognition of some property interest to be discerned in Caesars' position. The property interest asserted in <u>Kennie</u> was the right to make lawful improvements to the shoreline land. <u>Id.</u> at 943 (noting the "constitutionally protected right to make improvements," though the "right is, of course, subject to some government regulation"). Here, in contrast, Caesars' claim has no analog to the property in land and no reasonable expectation of a right to engage in an extraordinary business raising serious commercial and social risks.

Since Caesars cannot allege any protected property interest at stake, the procedural and substantive due process claims have no foundation and are correctly dismissed for failure to state a claim subject to relief. In concluding as we do, we do not forget that the Supreme Judicial Court has not given a controlling decision on just the question before us, but we think the likelihood of an

-15-

answer in Caesars' favor is too slight to justify requesting that
Court for its opinion, under Mass. S.J.C. R. 1:03.

IV.

Caesars' remaining federal claims are that the defendants
violated the Fourteenth Amendment guarantee of equal protection of
the laws in forcing it out by treating it differently and to its
disadvantage, for the very purposes of disfavoring it and favoring
Wynn for the benefit of Lohnes.  The issue raised by dismissal of
these claims is whether the law construing § 1983 recognizes a
claim for wrongful treatment of a casino license applicant or its
associate as a class-of-one plaintiff, within the principle of
<u>Vill. of Willowbrook</u> v. <u>Olech</u>, 528 U.S. 562 (2000) (per curiam).
That case held that an arbitrary demand for a 33-foot easement
instead of the 15-foot easement required of similarly situated
applicants for municipal utility connections states a cognizable
claim, even though the complaining property owner did not fall
within any identifiable class of the disfavored, but stood as a
unique victim.

Caesars complains here as a class of one.  It alleges no other
applicants or potential applicants who were subject to the
disadvantageous treatment it claims to have suffered and no
membership in a class whose differential treatment might be
suspect.  <u>Id.</u> at 565.

We think that no class-of-one cause of action can be

-16-

recognized against state actors given the remarkable breadth of
discretion provided by the Massachusetts casino licensing statute.
The persuasive authority here is <u>Engquist</u> v. <u>Oregon Dep't of
Agric.</u>, 553 U.S. 591 (2008), which limited the scope of the <u>Olech</u>
rule. <u>Engquist</u> dealt with the singular treatment claim of a
government employee-at-will who was forced out of her job without,
as she claimed, any reasonable justification as judged by
established employment criteria or practice. <u>Engquist</u>'s specific
holding distinguished government action under the "arm's-length
regulation," involved in <u>Olech</u> from government treatment of its own
employees in positions filled subject to discretionary judgment
about whom to employ, where "treating seemingly similarly situated
individuals differently . . . is par for the course." <u>Id.</u> at 604.
That is, pure legal discretion in government hiring and firing,
absent contractual restrictions forming terms of employment, is not
itself unreasonable, making judicial review both inappropriate, <u>see
id.</u> at 599-600, and potentially destructive of a systemically
justifiable way of doing public business, <u>id.</u> at 607-09.

Although <u>Engquist</u>'s specific subject was public employment,
its reasoning extends beyond its particular facts, and we agree
with those federal courts that have found the case applicable
beyond government staffing. <u>See, e.g.</u>, <u>Douglas Asphalt Co.</u> v.
<u>Qore, Inc.</u>, 541 F.3d 1269, 1273-74 (11th Cir. 2008) (applying
<u>Engquist</u> to government contracting); <u>Flowers</u> v. <u>City of</u>

-17-

_Minneapolis_, 558 F.3d 794, 799-800 (8th Cir. 2009) (applying _Engquist_ to police investigations); _but see_ _Analytical Diagnostic Labs, Inc._ v. _Kusel_, 626 F.3d 135, 141-43 (2d Cir. 2010) (noting some tension among the federal courts on how far _Engquist_'s reasoning extends beyond the public employment context). The scope of the _Engquist_ rationale, we think, is expressed in the Supreme Court's explanation that public hiring for at-will employment is an example of those "forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments . . . [in which] treating like individuals differently is an accepted consequence of the discretion granted." 553 U.S. at 603. The price of such discretion as is considered reasonable at the systemic level is thus the absence of a crucial element of _Olech_'s class-of-one cause of action, "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." _Id._ at 602.

These quotations from the _Engquist_ majority opinion describe the circumstances of the casino licensing scheme at issue here. Our enquiry into the property requirement in the due process discussion has already shown the breadth of discretionary Commission judgment authorized by the general terms of the required IEB investigation into an applicant's "overall reputation," which encompasses the subject matters mentioned earlier "without

-18-

limitation." Mass. Gen. Laws ch. 23K, § 12(a).  The possibility of mandating or deriving a baseline against which to assess a claim of "treating seemingly similarly situated individuals differently," Engquist, 553 U.S. at 604, is in fact even further from possibility in casino licensing than in public hiring.  Nor is there any room to suggest that broad discretionary judgment is somehow out of place in licensing an activity that is disclosed in this record as attracting criminal elements at home and from abroad, and raising risks of criminal abuse and threats to projected public revenue. The IEB's and Commission's responsibility could not be further from the examples of approving utility connections or the placement of private docks, and the virtually plenary discretion that defines the state activity places this case squarely within the Engquist rule limiting class-of-one redress.  The equal protection counts must accordingly be dismissed.

V.

Since the federal claims were dismissed on the pleadings, the district court properly declined to exercise supplemental jurisdiction over the remaining state law claim for tortious interference with contractual relations.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

VI.

The judgment of the district court is affirmed.

## <u>ATTORNEYS' CERTIFICATE OF COMPLIANCE</u>
## <u>PURSUANT TO FRAP 34(a)(7)(C)</u>

The undersigned, an attorney duly admitted to the practice of law before the Bar of the Fourth Circuit Court of Appeals, hereby certifies the following in accordance with FRAP 34(a)(7)(C):

1.     I am appellant's attorney of record and I prepared this brief.

2.     I hereby certify that used the word processing program Microsoft word 2010 which has a word count display for the main document. I hereby further certify that excluding this certification, the date and the signature line, and in compliance with FRAP 34(a)(7)(B)(i) the main brief document and the statement regarding the request for oral argument  contains 11,242 words which is below the 14,000 word limitation allowed by the rule.

Dated: July 1, 2015

Attorney for the Appellant:
/s/ Jacques G. Simon
Jacques G. Simon, Esq.
2174 Hewlett Avenue, Suite #201
Merrick, NY 11545
Phone: (516)378-8400
Fax:   (516)378-2700
Email: jgs@jacquessimon.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 1st day of July, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Andrew H. Erteschik
POYNER SPRUILL LLP
Post Office Box 1801
Raleigh, North Carolina  27602
(919) 783-2895

*Counsel for Janelle R. Rhyne*

Gerald K. Robbins
NORTH CAROLINA DEPARTMENT OF JUSTICE
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6850

*Counsel for State of North Carolina*

Ronald H. Garber
BOXLEY, BOLTON, GARBER
  & HAYWOOD, LLP
Post Office Drawer 1429
Raleigh, North Carolina  27902
(919) 832-7004

*Counsel for Dicky S. Walia*

Stephen D. Feldman
Matthew W. Sawchak
ELLIS & WINTERS, LLP
Post Office Box 33550
Raleigh, North Carolina  27636
(919) 865-7009

*Counsel for North Carolina
  Medical Board, et al.*

I further certify that on this 1st day of July, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ Jacques G. Simon
*Counsel for Appellant*